Joe S. HILL et al., Appellants,

v.

Matt DAVIS et al., Appellees.

No. 3953.

Court of Civil Appeals of Texas.

Eastland.

June 11, 1965.

Rehearing Denied July 9, 1965.

---

Richey, Sheehy, Teeling & Cureton, B. N. Hamilton and W. E. Cureton, Waco, H. J. Rucker, Midland, Waggoner Carr, Atty. Gen., Austin, for appellants.

Hollie G. McClain, Welby Parish, Power, McDonald & Mell, Milton Greer Mell, Gilmer, for appellees.

WALTER, Justice.

Joe S. Hill entered into a written contract with Matt Davis and his wife to purchase 132.66 acres of land in Upshur County. Hill assigned his contract to the Veterans' Land Board of Texas, hereinafter referred to as the Board. Subsequent to the execution of the contract Davis executed an oil and gas lease on the property to Cargill.

Hill and the Board filed suit against Davis for reformation and specific performance of the contract and against Car- gill to set aside the oil and gas lease. After hearing the evidence in a jury trial, the court rendered a judgment that Hill and the Board take nothing and they have appealed. Appellants contend that the record shows, as a matter of law, that they are entitled to reformation and specific performance of the contract. We agree.

Davis listed the property with Coe and Shepperd, real estate agents, at $50.00 per acre. Coe called Davis and informed him that he could sell the land to Hill through the Veterans' Land Board. Shepperd, with the assistance of his partner Coe, wrote the contract which was on a printed form issued by the Board. On October 28, 1960, Davis executed an oil and gas lease on the property to Robert Cargill. The property was described in the lease as containing 124.41 acres and the consideration was $2,488.20. Davis' contention is that the contract to sell the land to Hill expired on October 10, 1960.

The Board requested that the land be surveyed. Davis employed R. E. McClelland, County Surveyor of Upshur County, to make the survey. McClelland's survey revealed that the tract contained 124.405 acres. The Board's calculations showed it contained 124.377 acres. McClelland testified the difference in his calculations and that of the Board was 28/1000 of an acre, and that this represented the area of a road leading from a public road to the Davis property.

Paragraph 11 provided that the contract "shall remain in full force and effect until thirty (30) days from receipt by the Veterans' Land Board of written notice of cancellation from either party",—The record conclusively shows that neither party gave the Board such 30 days notice of cancellation. Also, Davis expressly waived the expiration date in his letter to the Honorable Bill Allcorn on September 6, 1960, as follows: "I certainly waived the discrepancy in the Contract, and agree that you can take all the time you need to approve the same, but sincerely hope that you

can get to it in the next few days." For these reasons, we hold that the contract to sell to Hill had not expired when Davis executed the oil and gas lease.

Hill testified substantially as follows: I heard about the land from Mr. Coe. He showed me the land on two occasions. Mr. Coe priced the land to me at $50.00 per acre. Coe informed me the tract contained 132.66 acres. I relied upon Coe's representation about the acreage. I didn't know that 132.66 acres was not correct until after the survey was made. According to the rules and regulations of the Board I was required to deposit a portion of the purchase price. I sent the Board one check for $331.00, and two checks for $50.00 each.

On November 7, 1960, Hill wrote Davis a letter, parts of which are as follows:

"I believe you will see by my letter of October 31, to Mr. Coe in Gilmer, a copy of which was sent to you, that it was never my intention that the total consideration would be $6200.00 (the amount of commitment from the land Board) but that the consideration would be figured on the agreed price of $50.00 per acre. On the basis of 124.377 acres, the consideration of $50.00 per acre would amount to $6218.-85. This, I believe, is in all aspects in compliance with our contract, the only difference being the number of acres involved, which I had no way of ascertaining until your Surveyor surveyed this land and found that there was a shortage of approximately eight acres." "Let me state that in no way do I think that this contract is void, and that I have no intention of doing anything other than closing this transaction as contracted and agreed to."

On December 8, 1960, Hill sent Davis a telegram, a part of which is as follows:

"I AM READY WILLING AND ABLE TO *CONSUMATE* THE TRANSACTION AND WILL PROVIDE FOR THE PURCHASE PRICE TO BE PAID YOU UPON BEING FURNISHED A DEED COVERING SAID LANDS SUBJECT ONLY TO THE TERMS AND CONDITIONS OF SAID APPLICATION AND CONTRACT OF SALE. I HEREBᵛ CALL UPON YOU TO DELIVER SAID DEED."

There is a notation at the bottom of the telegram that it was received on December 9, 1960.

Nolan Coe testified that Davis listed the property with him at $50.00 per acre. In his letter to Coe of November 7, 1960, Davis said: "I am willing to accept the price of $50.00 per acre as I told you that I would when I listed the place with you for sale."

After stating that he told Coe the number of acres in the tract, Davis was asked "And how much did you tell him?" and he answered: "I told him there was a hundred and thirty-one and two-thirds acres. I might have told him there was a hundred and thirty-two, but we made a mistake in the contract there." Davis was asked: "Are you saying now you should have told him it was a hundred and thirty-one and two-thirds?" and he answered "Yeah."

■ The "Application and Contract of Sale-Texas Veterans' Land Program" which Hill and Davis signed "is actually an application by the veteran to the Land Board for benefits under the Veterans' Land Program, and in addition is a contract of sale between the veteran as purchaser, and the land owner as seller." Joe D. Foster et al. v. Wilfrid E. Lessing, Jr., et al., Tex.Civ.App., 346 S.W.2d 939, (Ref. N.R.E.).

■ The record conclusively shows that at the time the contract was executed Davis intended to sell his land for $50.00 per acre and that Hill intended to purchase the land at $50.00 per acre. There was a meeting of the minds on this matter.

There was an innocent misrepresentation made about the acreage. The consideration of $6,633.00 was calculated by multiplying $50.00 by the number of acres recited in the contract.

We are of the opinion that appellants are entitled to have the contract reformed on account of a mutual mistake in describing the property to be covered by the contract of purchase and sale. The contract is reformed to correctly describe the land as it is described in Paragraph 3 of plaintiffs' First Amended Original Petition. The contract is also reformed to show the true consideration to be $6,218.85.

Appellants are entitled to specific performance of the reformed contract upon payment of $6,218.85, less the amount received by Davis for the oil and gas lease to Cargill and less the cost of a title guaranty policy required of the seller.

The judgment is reversed and the cause is remanded with instructions to enter judgment in accordance with this opinion.

The judgment is reversed and remanded with instructions.